FIRST NATIONAL BANK OF COOPERSTOWN *v.* STATE SAVINGS BANK OF IONIA.

1. EXECUTION SALE—UNRECORDED DEED—PRIORITY.

A sale of land on execution entitles the purchaser to priority over a vendee whose deed was not recorded until after the notice of levy had been filed, and of whose claims the party in interest had no notice.

2. PARTNERSHIP—TITLE TO LANDS.

A person dealing with one member of a partnership has a right to assume that land conveyed to the members of the firm by deed which contains no notice that the grantees are partners is held by them as tenants in common, although it is in fact partnership property.

3. NOTE BY FIRM—RENEWAL BY SURVIVING PARTNER.

A creditor of a firm, who accepts in place of the firm obligation the individual note of the surviving partner, which is extended from time to time, thereby loses his right as a partnership creditor.

Appeal from Montcalm; Davis, J. Submitted February 21, 1902. (Docket No. 26.) Decided April 8, 1902.

Bill by the First National Bank of Cooperstown, New York, against the State Savings Bank of Ionia and John Peter Johnson, to remove a cloud from title. From a decree dismissing the bill, complainant appeals. Affirmed.

*William K. Clute,* for complainant.

*George E. & M. A. Nichols,* for defendant bank.

MONTGOMERY, J. This case has once been before the court on demurrer to the bill of complaint, and is reported in 123 Mich. 321 (82 N. W. 125), to which reference should be had for an understanding of some of the questions involved. As the case was there presented, we held that, upon the face of the bill, the complainant was entitled to

relief, but the case was remanded, with leave to the defendants to answer over. An answer has since been filed, and the case determined upon proofs taken, and the bill dismissed. Complainant appeals.

As the case is now presented, the following facts appear: Prior to October, 1889, Amos Bissell and George N. Bissell were general copartners under the firm name of Amos Bissell & Son. The land which is the subject of this controversy was in fact copartnership property, but was deeded to them as tenants in common by Oscar Demott on November 19, 1869, by a warranty deed, which was of record. In October, 1889, Amos Bissell died. On December 27, 1892, George N. Bissell and Hannah Bissell made a contract with defendant John Peter Johnson to sell him the land for $629.40. On September 26, 1893, George N. Bissell assigned this contract to his wife, Hannah Bissell, as security for the repayment of her notes loaned to him. On November 14, 1893, Hannah Bissell assigned this contract to complainant. On November 23, 1893, George N. Bissell, individually and as survivor of the firm of Amos Bissell & Son, conveyed to one Brooks, as receiver of George N. Bissell individually and of said firm, the land in question. On November 20, 1894, said Brooks, as receiver, executed a deed to Philip H. Potter. These two last-mentioned deeds were recorded April 2, 1895, after the levy of defendant, hereinafter referred to. On March 3, 1898, George N. Bissell, by quitclaim deed, conveyed to complainant. On the same date the heirs of Potter conveyed to complainant. The defendant bank caused a levy to be made on this land on December 19, 1894, and a sale under the execution was made on April 15, 1895.

The first question presented is as to the effect of these conveyances. The statute (3 Comp. Laws, § 9224) provides for the filing of notice of a levy with the register of deeds, and further provides that, upon such notice being filed, "such levy shall be a lien thereon from the time when such notice shall be so deposited; and the lien thus obtained shall, from the filing of such notice, be valid

against all prior grantees and [mortgagees] mortgages of whose claims the party interested shall not have actual nor constructive notice." This statute scarcely requires construction, and it is clear that as to rights claimed by virtue of conveyances from George N. Bissell, directly or indirectly, and not recorded at the time the levy was made, the defendant's levy is entitled to priority. See *Corey* v. *Smalley,* 106 Mich. 257 (64 N. W. 13, 58 Am. St. Rep. 474).

The next question is whether the complainant is entitled to priority over the defendant as a firm creditor. As before stated, the conveyance to the Bissells gave no indication upon the face of the record that the parties were other than tenants in common. There was no notice that the two grantees were copartners, and, under such circumstances, the creditor levying on the land would be justified in assuming that the lands were held by the two parties as tenants in common. See *Hammond* v. *Paxton,* 58 Mich. 393 (25 N. W. 321). But the claim is made that the evidence showed that there was actual notice that these were copartnership lands. Unfortunately for this contention, the complainant's evidence fails upon this branch of the case. Mr. Lemuel Clute was a witness in his lifetime, and the question of notice depended upon his recollection and that of Judge Vernon H. Smith, the president of the defendant bank. Judge Smith does not recollect any conversation in which notice of the copartnership was given to him, nor that he had any knowledge of it prior to the time of the levy and sale under the execution. Mr. Clute's testimony, while entirely candid, was of a distinctly negative character. He testified:

" It seems to me that the judge and I must have talked it over on that theory. If he didn't say that he didn't recollect it as such, I should feel sure that we did. That is all."

We think that this testimony is not sufficiently positive to justify us in basing a finding upon it,—certainly not sufficient to justify us in overturning the conclusion of the

circuit judge. We find, then, that on the face of the record there was no notice that these lands were copartnership lands. The defendant had the right to assume that the parties were tenants in common. George N. Bissell was the sole heir at law of his father, and the title was fully vested in him, subject only to the rights of creditors of Amos Bissell, who, as such, should pursue his property.

But it is claimed that this complainant is entitled to a prior equity by reason of its position as creditor of the firm of Amos Bissell & Son; and, upon the averments as made in the bill of complaint, this court, when the case was here before, intimated that such equity existed. But the case presents itself in a very different aspect after the proofs have been introduced. It appears now that Amos Bissell died in 1889; that the complainant then held a claim against Amos Bissell & Son; that, after the death of Amos Bissell, new notes were accepted from time to time, made by George N. Bissell, indorsed by Hannah Bissell and Amos Luther, until 1893, at which time judgments were taken against these parties upon the notes. Can it be said that these obligations so sued upon were firm debts? We think not. It was not within the power of the surviving partner to continue to give firm paper after the dissolution of the copartnership by the death of one member. See *Matteson* v. *Nathanson*, 38 Mich. 377; *Potter* v. *Tolbert*, 113 Mich. 486 (71 N. W. 849). And while it may be a question of fact as to whether it was the intention to discharge the estate, yet, in view of the fact that George N. Bissell was the sole heir of the deceased partner, and was continuing the business in a manner entirely unauthorized by the law relating to the winding up of copartnership affairs, it must be assumed that the complainant, in continuing to extend this paper from time to time, elected to accept his personal responsibility, rather than that of the estate of the deceased partner. See *Childs* v. *Pellett*, 102 Mich. 558 (61 N. W. 54); *Smith* v. *Shelden*, 35 Mich. 42 (24 Am. Rep. 529). It must be held, then, that the bank, in accepting the

assignment from Hannah Bissell, received it, not in payment of a debt of the late copartnership, but in payment of a debt of George N. Bissell, upon which Hannah Bissell was a surety.

The decree dismissing the bill will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.